# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

JAMES STEPHENS,

    Petitioner,

vs.
                                    CASE NO. 4:04cv302-RH/WCS

JAMES CROSBY,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

    This is a petition for writ of habeas corpus filed by James Stephens pursuant to 28 U.S.C. § 2254. Doc. 1. Petitioner challenges his conviction for sexual battery upon a child under the age of 12 by an adult over the age of 18. The conviction was in the Circuit Court of the Judicial Circuit, in and for Leon County, Florida, case number 96-301CFA. Respondent filed an answer, doc. 11, and Petitioner filed a traverse, doc. 14.

**Procedural History**

    Petitioner was convicted after a jury trial and was sentenced to life imprisonment. He filed a direct appeal, raising one issue, and filed a Fla.R.Crim.P. 3.850 post-conviction motion. The trial court held an evidentiary hearing on some of the Rule 3.850

claims. Petitioner appealed the trial court's denial of this motion. Petitioner brings eight claims to this court.[1] Respondent has not argued that this petition is untimely. The claims will be addressed in the order presented.

**Section 2254 Standard of Review**

For claims which were properly exhausted and adjudicated in state court, this court's review is limited. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute). Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was

---

[1] Respondent has addressed a ninth claim, that the trial court abused its discretion in failing to appoint counsel for Petitioner with respect to the evidentiary hearing on his Rule 3.850 motion. Doc. 11, p. 50. There is no such claim before this court. Doc. 1. In any event, this is not a ground for relief in this court. 28 U.S.C. § 2254(i) (ineffectiveness or incompetence of counsel in a state collateral proceeding is not a ground for relief under § 2254).

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146  L.Ed.2d 389 (2000) [2]; Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court  precedent.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

---

[2] This was Justice O'Connor's opinion for the Court in Part II; the rest of the opinion for the Court (Parts I, III, and IV) was by Justice Stevens.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner has a heavy burden to establish the deficient performance prong of Strickland, by showing that "no competent counsel would have taken the action that his counsel did take." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). There are no rigid requirements, or absolute duty to investigate a particular line of defense. *Id.*

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

261 F.3d at 121 (citations omitted).

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim

on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

If the state court identifies and applies the framework of Strickland in assessing an ineffective assistance claim, its adjudication does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . . Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams). "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Grounds One and Eight:**

> **Whether Petitioner's trial counsel was ineffective for failing to object to an amended information that expanded the period of time during which the offenses were alleged to have occurred**

The information originally charged Petitioner with sexual battery upon a person less than 12 years of age occurring between July 11, 1983, and May 26, 1985. Doc. 11, ex. A. Apparently there was an amended information, although Respondent failed to file it as part of the record. From argument made by the State at trial it is also apparent that the amended information charged that the offense occurred from between July 11, 1983, and July 11, 1986. Petitioner contends he went into state prison on August 29,

1985, and served until April 12, 1988.  Doc. 11, ex. G (Rule 3.850 motion, p. 3). Petitioner contends that the State unfairly amended the information to allege that the offense occurred during the time he was in prison, forcing him to inform the jury that he was in prison to prove a partial alibi.  Petitioner contends that his attorney was ineffective for failing to object to the amended information on this basis.

Neither the trial court nor Respondent have addressed this specific claim.  In rejecting this claim, the trial court held that "[t]his issue was raised by defense counsel." Doc. 11, ex. H, R. 64.[3]  Cited for this finding are pages 25-27 and 144-145 of the trial transcript.  This is not correct.  Petitioner's trial counsel did not object to the amended information.  He simply argued in his opening argument that Petitioner could not have committed the offense after May 26, 1985, because he was in jail from about that date throughout the rest of the dates alleged in the indictment.  Doc. 11, ex. C (trial transcript), pp. 25-26.  Counsel argued that Petitioner had an alibi for about thirteen and one-half months of the period alleged.  *Id.*, p. 26.

The trial court also reasoned that where, as in this case, the victim was so young at the time of the assaults that she was unable to testify to specific dates when the sexual assaults occurred, and "ongoing sexual abuse of a child" is alleged, it is permissible for the information to allege that the offenses occurred on one or more occasions within a given time period.  Doc. 11, ex. H, R. 65.  Cited for this was State v. Generazio, 691 So. 2d 609 (Fla. 4th DCA 1997) and Dell'Orfano v. State, 616 So. 2d 33 (Fla. 1993) which so hold.  Petitioner here was charged with only one offense.  Doc. 11,

---

[3] The order does not have page numbers, but the copy is from a record on appeal and the record on appeal page numbers are provided here.

ex. A. The proof was that sexual abuse was ongoing during the period alleged. *Id.*, ex. C, pp. 45-53, 79. The victim could only say that these events occurred when she was five or six years old. *Id.*, p. 44. Thus, it was proper, generally speaking, under Florida law for the amended information to charge that this offense occurred over an extended period of time.

But that was not Petitioner's claim. It was Petitioner's contention that since the State knew he was in prison for the last thirteen months of the period charged in the information, there was no reason to allege that the offense occurred during those months except to force him to reveal to the jury that he was then in prison to prove a partial alibi.

This specific claim is without merit, however. Petitioner testified at trial. Doc. 11, ex. C, pp. 89-108. His prior felony convictions were coming into evidence on cross examination, even if the information had not been amended, and his attorney tried to soften the impact by bringing them out on direct examination. *Id.*, pp. 93-94. When the jury learned that he had been convicted nine times in the past, there was little prejudice in revealing to the jury that Petitioner was in jail in 1985. When someone is convicted of nine felonies, it is reasonable to infer that he spent some time in jail or prison with respect to those convictions. Thus, neither attorney error nor prejudice to the outcome has been shown.

**Ground Two:    Whether Petitioner's trial counsel was ineffective for failing to call witnesses**

Petitioner argues that his attorney should have called Annie Laura Coggins as a witness. Doc. 4, p. 9. He asserts that he was "staying with" this witness after his

release from prison in 1996. *Id.* He claims Coggins heard the victim's mother state that she would get him for "messing around on" her, that is, for dating Coggins. *Id.*, p. 10. He asserts that his attorney subpoenaed Coggins as a witness but refused to call her. *Id.*, p. 11.

The trial court denied this claim as facially insufficient, finding that Petitioner failed to identify any of the three witnesses alleged to have been essential to his defense. Doc. 11, ex. H, R. 65. This is true. Petitioner failed to identify any of these witnesses in his Rule 3.850 motion; he did not mention Coggins. *Id.*, ex. G, p. 4. A defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel. *See* Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir.1985), *cert. denied*, 479 U.S. 918 (1986); Bolder v. Armontrout, 921 F.2d 1359, 1363-1364 (8th Cir.1990), *cert. denied*, 502 U.S. 850 (1991); United States v. Vargas, 920 F.2d 167, 169-170 (2d Cir.1990), *cert. denied*, 502 U.S. 826 (1991). Thus, the state court's adjudication of the merits of this federal claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).[4]

---

[4] Further, to the extent Petitioner is now raising a specific claim as to the failure to call Coggins as a witness, the claim is procedurally defaulted. *See* Grubbs v. Singletary, 120 F.3d 1174, 1178 (11th Cir. 1997), *cert. denied,* 523 U.S. 1060 (1998) (Florida prisoner procedurally defaulted the ineffectiveness claims he had not specifically presented in his Rule 3.850 motion, would be procedurally barred from presenting them in a second motion, and had not shown cause for his default) (citations omitted).

**Ground Three:** Whether Petitioner's trial counsel was ineffective for failing to obtain the records of the victim's period of residence at apartment D-116 of the Parkview Garden Apartments

Petitioner asserts that the victim's mother testified that she and her daughter moved from these apartments in the latter part of 1985. Doc. 4, p. 13. Petitioner contends that his attorney obtained a subpoena for the records of residency, but asserts that counsel erred because no records were produced at trial. *Id.*

The trial court essentially found no prejudice to the outcome because the child could not remember the precise periods during which she had been sexually battered. Doc. 11, ex. H, R. 65. The court also reasoned that Petitioner's attorney did ask the victim and her mother for the dates of their residency and further reasoned that Petitioner had failed to show how the records would have changed the outcome. *Id.*

In response, Petitioner argues that the rental records would show the ending of the period for the alleged sexual assaults. Doc. 14. The victim's mother testified that she and her daughter no longer resided at the apartment after the "last of '85." Doc. 11, ex. C, p. 75. Petitioner himself testified that there came a time in 1985 when he was "picked up" for walking away from jail, and from that time on, he was continuously in custody. *Id.*, p. 95. Thus, the evidence at trial was clear that Petitioner could not have sexually assaulted the victim after she and her mother left the apartments in the last of 1985.

Petitioner has not asserted that they left at any earlier time, or that the records would prove that they left any earlier. Indeed, he testified that there came a time in 1985 when he was taken to the county jail. *Id.*, p. 94. He said he then walked away from the jail and spent the night with the victim's mother, who was still living in the

Case No. 4:04cv302-RH/WCS

apartment. *Id.*, p. 95. He was again arrested and spent the remainder of the time relevant to the information in custody. Thus, the state court's adjudication of the merits of this federal claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground Four:** **Whether Petitioner's trial counsel was ineffective for failing to present a coherent defense**

Petitioner contends his counsel chose the defense of "confabulation," that is, that the victim replaced fact with fantasy in her memory. He alleges that the trial court refused to allow counsel to argue this defense because counsel did not have an expert witness on the subject. He argues that counsel further erred in mentioning this defense in opening argument, and then suggesting that the victim may also have been intentionally lying, contrary to the theory that she testified truthfully from false memories. While not argued in the initial motion and memorandum, in the traverse, doc. 14, Petitioner also contends that his attorney was ineffective for failing to show that the accusations of sexual abuse were "based on a vendetta [by the victim's mother] against him."[5]

The trial court rejected this claim, finding that it had only precluded the use of the word "confabulation" at trial. Doc. 11, ex. H, R. 66. The court found that Petitioner's attorney "still could argue the theory that it was a memory of an event that did not

---

[5] Petitioner argued in his Rule 3.850 motion that he told his attorney that the victim's mother had bad feelings toward him, and he asserted that the victim's mother made her daughter's accusations known to law enforcement in order to harm Petitioner, knowing that the victim had falsified the accusations to gain her mother's sympathy. Doc. 11, ex. G, p. 6.

occur." *Id.* This is true. In his opening statement, Petitioner's attorney used the word "confabulation" and sought to explain what it meant. Doc. 11, ex. C, p. 27. The State objected. *Id.* The court determined that the word "confabulation" would confuse the jury, but permitted argument that "she's got a memory of something that didn't occur." *Id.*, pp. 34-35.

The trial court also reasoned that it was not attorney error to argue alternative defenses, that the victim either had a false memory or that she lied. Doc. 11, ex. H, R. 66. This is sound reasoning. It is often necessary during a trial to propose alternative theories such as these. The jury would have understood that if the victim was lying, Petitioner would probably not have had evidence as to why. The jury would not have rejected the theories simply because two different theories were argued. Had either theory been believed by the jury, there would have been a reasonable doubt and Petitioner would have been acquitted.

Petitioner's claim that his attorney was ineffective for failing to call an expert witness to support the theory that the victim's memory had been replaced with fantasy fails for the same reasons as ground two. Petitioner has not come forward with specific evidence that a specific expert witness had testimony useful to his defense.

The only issue not addressed by the trial court is Petitioner's claim that his attorney should have argued that the victim's mother somehow caused the victim falsely to accuse him because she (the mother) disliked him. The victim testified that she was born on July 11, 1979. Doc. 11, ex. C, p. 40. She said that the sexual abuse occurred when she was five or six years old, which would have been in 1984 or 1985. *Id.*, p. 44. She did not report the offenses until January 22, 1996. *Id.*, p. 41.

The victim's mother testified that she ended her relationship with Petitioner in 1985 because he would not work. *Id.*, p. 74. She said she had no occasion to speak with Petitioner after that. *Id.*, pp. 76-77. She testified that in 1996, after her daughter reported the sexual abuse to her, she did not know where Petitioner was and had to ask others to find Petitioner. *Id.*, p. 81.

Petitioner testified that he continued to see the victim's mother after he got out of prison. *Id.*, p. 93. He said he was released in 1987. *Id.*, p. 97. He said that he spoke with the victim's mother after he got out of the Tallahassee work release center and he claimed she wanted to resume the relationship. *Id.*, p. 98. Petitioner testified that it was just a proposal from the victim's mother, and he did not act on it. *Id.*, p. 99. The next encounter with the victim's mother, said Petitioner, was in 1996. *Id.*, p. 100. He said that at this time, the victim's mother had called him, asking him "why did I do that?" *Id.* He said that the victim's mother was upset with him when she found out he had a girlfriend, presumably referring to his encounter with the victim's mother in 1987. *Id.*, pp. 100-101.

The theory that the victim's mother caused the victim to lie because she disliked Petitioner has no substantial evidentiary support and is not plausible. Petitioner had no contact with the victim's mother from, at the latest, 1987, to 1996. Had the victim's mother disliked Petitioner sufficiently to cause her own daughter to accuse him of sexual abuse, she would have done it long before 1996.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. "Even if many reasonable lawyers would

not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 396 (11th Cir. 1994). Petitioner here has not shown that his attorney had a plausible alternative defensive theory. Therefore, he has not shown ineffectiveness of counsel under Strickland.

**Grounds Five and Six:**

> **Whether Petitioner's trial counsel was ineffective for revealing that Petitioner had repeatedly been incarcerated, had escaped from custody, had been convicted of robbery, and had forged checks on the account of the victim's mother**

On direct examination of Petitioner, counsel established that Petitioner had been convicted nine times in the past, three or four of those convictions were for bad check charges apparently involving the checking account of the victim's mother, and that none of the felonies involved sex acts or violence toward women. Doc. 11, ex. C, pp. 94-95. Counsel then asked Petitioner to tell the jury about a time he spent in prison for a new offense, and he said he had been "arrested for sales of cocaine and sent to prison." Id., p. 97. When the prosecutor sought to elicit the nature of all of Petitioner's offenses, the trial court ruled that by bringing out the cocaine charge, Petitioner's counsel opened the door to cross examination as to the nature of the charges. Id., p. 102. The State then established that Petitioner had also been convicted of armed robbery. Id., p. 103.

The trial court held an evidentiary hearing on these claims. Doc. 11, ex. I (transcript of Rule 3.850 evidentiary hearing), p. 3. Petitioner's attorney, James Webb, testified that at the time of Petitioner's trial, he had been a criminal defense lawyer for

20 years and had tried more than 200 cases. *Id.*, p. 4. He reasoned that in a child sexual abuse case like this, it was "pretty critical" that Petitioner testify. *Id.*, p. 5. He said that since Petitioner must testify, he knew the State would bring out his prior convictions on cross examination. *Id.* and p. 7. Webb reasoned that he wanted the jury to know that none of the prior offenses involved sexual battery upon a child, and therefore he had to inform the jury of the nature of those offenses. *Id.*, p. 6. He also wanted to emphasize that Petitioner was in prison on one of the offenses during a significant portion of the period charged in the information. *Id.*, pp. 5-6. Finally, he wanted the jury to know that the victim's mother had been the victim of a check offense committed by Petitioner, and he thought that this might demonstrate "some bias or perjury on her part towards . . . her former significant other." *Id.*, p. 5.

The court found that the decision of Petitioner's trial attorney to bring out his prior convictions on direct examination was a tactical decision that was reasonable based upon the three reasons given by trial counsel. *Id.*, ex. J, R. 97-98. This is persuasive. The only way Petitioner could have avoided the dilemma was not to have testified. On counsel's advice, Petitioner chose to testify. This was also a tactical decision. Had he allowed the State to identify the number of prior convictions he had without specifying the nature of those convictions, the jury might have thought that sexual battery was one or more of the convictions.

It was also a tactical decision for Petitioner's counsel to reveal these convictions on direct examination. This is commonly done so that it does not appear that Petitioner is trying to hide unfavorable information from the jury, and to deny the State the ability of dragging the convictions out on cross examination.

Case No. 4:04cv302-RH/WCS

Finally, Petitioner argues that his attorney erred by revealing that he had previously been convicted of dealing in cocaine, yet he failed to reveal that he had previously been convicted of armed robbery, which the State brought out on cross examination. The cocaine charge was revealed by Petitioner in response to an open-ended question put to him by counsel on direct examination. Perhaps this was attorney error. The question did not need to be so open-ended. The court need not determine whether this was attorney error, however, as prejudice to the outcome has not been shown. The jury knew that Petitioner had been convicted of nine felonies. Even if the jury had not been told that two of those were convictions for sale of cocaine and robbery, the jury would have suspected as much.

In summary, Petitioner has not shown that "no reasonable lawyer, in the circumstances, would have" selected this trial strategy. <u>Rogers v. Zant</u>, 13 F.3d at 396. Therefore, he has not demonstrated that his attorney was ineffective as defined by <u>Strickland</u>. Consequently, Petitioner has not shown that the state court's adjudication of the merits of these two federal claims has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground Seven:**  **Whether Petitioner's trial counsel was ineffective for failing to object to vouching for the credibility of the victim in closing argument**

Petitioner argues that in closing argument, the prosecutor improperly vouched for the credibility of the victim in the following instances:

> And what you heard from her [the victim] has that ring of truth because of her inability to relate to you all of these specific details.

Doc. 11, ex. C, p. 126.

> But I will submit to you that [the victim's] testimony here to you all was very credible.

*Id.*, p. 131.

The claim before this court is framed as an ineffective assistance of counsel claim. Doc. 1, p. 7. In the Rule 3.850 motion, however, Petitioner did not argue ineffective assistance of counsel. Petitioner argued that the vouching was prosecutorial misconduct and therefore a denial of due process (a fundamentally fair trial). Doc. 11, ex. G, pp. 36 and 43.

Prosecutorial arguments do not constitute reversible error unless such argument renders the trial so fundamentally unfair as to amount to a denial of due process, or unless the statement so prejudices another specific constitutional right, such as the privilege against self-incrimination, as to amount to denial of that specific right. Donnelly v. DeChristoforo, 416 U.S. 637, 643-645, 94 S.Ct. 1868, 1871-1872, 40 L.Ed.2d 431 (1974). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998) (citations omitted).

The trial court held that these arguments were "fair comments on the evidence introduced at trial." Doc. 11, ex. H, R. 67. The court also held that this was a claim that could not be raised on a Rule 3.850 motion, and should have been raised on direct appeal. *Id.*

The claim that Petitioner attempts to bring before this court, ineffective assistance of counsel, is procedurally defaulted. A state prisoner bringing a defaulted constitutional claim to federal court has the burden of demonstrating cause and prejudice for the default before obtaining relief. Engle v. Isaac, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572-1573, 71 L.Ed.2d 783 (1982), reaffirming the holding in Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

It is possible, however, that Petitioner exhausted his state court remedies as to the underlying claim of denial of a fair trial. Indeed, that is how he argues the claim in his memorandum. Doc. 4, pp. 28, 35. That claim was presented in the Rule 3.850 motion and one of the two rulings by the circuit court apparently reached the merits of the fair trial claim.[6] But it makes little difference whether this court addresses this as a claim of ineffective assistance of counsel or a denial of due process since both require a showing of prejudice to the outcome. Prejudice to the outcome has not been shown.

It is not improper for a prosecutor to comment on the evidence. Improper vouching only occurs when the State "places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's

---

[6] When a state court's decision rests on an independent and adequate state procedural ground, the federal courts will not address the alleged constitutional violation. Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991). However, where there is an independent and adequate state law ground which justifies dismissal, but the decision fairly appears to rest primarily on federal law or is interwoven with federal law, a federal court will presume that the court made its ruling based on federal law unless the state court issued a clear and express statement that its decision was based on the procedural default. 501 U.S. at 733, 111 S.Ct. at 2556-57; discussing Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

Case No. 4:04cv302-RH/WCS

testimony." Hutchinson v. State, 882 So.2d 943, 953 (Fla. 2004).[7] The prosecutor's comments here were not objectionable. Thus, Petitioner has not shown that the state court's adjudication of the merits of these two federal claims has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Recommendation**

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by James Stephens pursuant to 28 U.S.C. § 2254 challenging his conviction for sexual battery upon a child under the age of 12 by an adult over the age of 18 in the Circuit Court of the Judicial Circuit, in and for Leon County, Florida, case number 96-301CFA, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 19, 2005.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[7] The federal rule is the same. "It is improper for the prosecution to place the prestige of the government behind a witness by making explicit personal assurances of the witness's veracity or by indicating that information not presented to the jury supports the testimony." United States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir.), *cert. denied*, 500 U.S. 958 (1991). However, "The prosecutor . . . may still 'argue that the fair inference from the facts presented is that a witness had no reason to lie.' " *Id.* (citations omitted).

Case No. 4:04cv302-RH/WCS

## **NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**